## The People of the State of Illinois, Defendant in Error, v. Lloyd Z. Jones, Plaintiff in Error.

### Gen. No. 5,053.

1. INDICTMENTS—*effect of motion to quash made upon specific grounds.* A point not urged in a motion to quash an indictment made upon specific grounds may well be deemed to have been waived.

2. MALICIOUS MISCHIEF—*section 203 of division 1 of Criminal Code construed.* This statute means that whoever wilfully and maliciously kills, wounds, maims, disfigures or poisons any domestic animal, the property of another, shall be imprisoned, etc.; and also, that whoever wilfully and maliciously exposes any poisonous substance, with intent that the life of any domestic animal, the property of another, shall be destroyed thereby, shall be imprisoned, etc.

3. MALICIOUS MISCHIEF—*what not gist of section 203 of division 1 of Criminal Code.* Malice towards the owner is not the gist of the offense defined by section 203 of division 1 of the Criminal Code.

4. MALICIOUS MISCHIEF—*when indictment sufficient.* An indictment under section 203 of division 1 of the Criminal Code is sufficient if in the language of the statute.

5. MALICIOUS MISCHIEF—*when judgment not excessive.* A conviction under the malicious mischief statute which imposes a fine of $550, is not excessive inasmuch as such judgment is less than the average punishment authorized by the statute.

6. MALICIOUS MISCHIEF—*what not defense to prosecution for.* *Held,* that the evidence offered in this case to justify the castration of a bull owned by the prosecuting witness, did not constitute a defense to the prosecution.

7. APPEALS AND ERRORS—*when instructions presumed cured by others.* If the abstract filed on appeal does not set forth all of the instructions given it will be presumed in support of the judgment below that the given instructions as a series were accurate, that any omissions or inaccuracies appearing in those set out in the abstract were cured by other given instructions or that those which the plaintiff in error requested contained the same error or imperfection complained of.

8. APPEALS AND ERRORS—*what abstract should contain.* An abstract filed on review should set out in full every instruction given, modified or refused.

9. TRIAL—*when remarks of court will not reverse.* Remarks of the court made in the presence of the jury which are reasonably necessary to a discussion of the questions argued in the presence of the jury will not reverse especially where there was no motion asking that the jury be excluded during such discussion.

Prosecution for malicious mischief. Error to the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 24, 1909.

ANDERSON & ANDREWS and THOMAS J. WELCH, for plaintiff in error.

CHARLES E. STURTZ, for defendant in error; WM. C. EWAN, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Plaintiff in error was indicted for malicious mischief in castrating a bull calf, the property of one Johnson. The indictment was under section 203 of Division 1 of the Criminal Code, which is as follows:

"Whoever wilfully and maliciously, kills, wounds, maims, disfigures or poisons any domestic animal, or exposes any poisonous substance, with intent that the life of any such animal should be destroyed thereby, such animal being the property of another, shall be imprisoned in the penitentiary not less than one, nor more than three years, or fined not exceeding $1,000 or both; Provided, that this section shall not be construed to apply to persons owning sheep or other domestic animals, who may, in the exercise of reasonable

care and good intentions put out poison on his own premises where sheep are kept, to kill sheep-killing dogs.''

Plaintiff in error pleaded not guilty, and was tried and convicted, and was sentenced to pay a fine of $550 imposed by the jury, and the costs. He sued out this writ of error to review the judgment.

Plaintiff in error contends that the indictment will not sustain the conviction, because it does not charge that the act was done ''with intent that the life of such animal should be destroyed thereby.'' He argues that by the true construction of the statute the words last above quoted qualify all the preceding part of the section, and that that intent is an essential part of any crime under that entire section. This was not the view taken by plaintiff in error in the court below, for he filed a written motion to quash the indictment and therein alleged as the sole ground for said motion that no count of the indictment stated the value of the property alleged to have been maimed and wounded. He did not move in arrest of judgment. It may well be doubted whether, having expressly confined his motion to quash the indictment to another specific point, he can now be heard to question the sufficiency of the indictment upon this new ground. But if we treat the case as if plaintiff in error could now be heard to question the indictment for this newly discovered reason, we find that this position leads to the absurd result that if one were indicted under this statute for killing an animal it would be necessary to allege that the defendant wilfully and maliciously killed the animal with intent that the life of such animal should be destroyed thereby. Moreover, the construction contended for would lead to this result: one might cut off the ears and tail of a domestic animal, the property of another, and remove its eyes, and yet not be guilty of a violation of this statute, unless it further appeared that he intended that the life of the animal should be destroyed thereby. We are of opinion that the law makers in-

tended that such cruelty should be embraced within the provisions of this section. We construe the statute to mean that whoever wilfully and maliciously kills, wounds, maims, disfigures or poisons any domestic animal, the property of another, shall be imprisoned, etc.; and also, that whoever wilfully and maliciously exposes any poisonous substance, with intent that the life of any domestic animal, the property of another, shall be destroyed thereby, shall be imprisoned, etc. The indictment in Swartzbaugh v. People, 85 Ill. 457, was under this statute, and the substance of the indictment is there set out, and it does not contain any allegation that the shooting, wounding and cutting of horses, constituting the offense there complained of, was with intent that the lives of said horses should be destroyed thereby. It is true that this particular construction of the statute does not seem to have been presented in that case, but the indictment was held good and a conviction was sustained.

Each count of the indictment charged that the act was done by plaintiff in error "unlawfully, wilfully, feloniously and maliciously," but it does not in express words charge malice against the owner of the animal. Plaintiff in error contends that malice against the owner is essential to the crime, and that such a charge was essential to make the indictment sufficient to sustain a conviction. Authorities from other jurisdictions are relied upon to support this position. We are of opinion that such is not the law of this state. Section 6 of Division 11 of the Criminal Code of Illinois enacts that every indictment shall be deemed sufficiently technical and correct which states the offense in the language of the statute, or so plainly that the nature of the offense may be easily understood by the jury. Loehr v. People, 132 Ill. 504. This indictment is in the language of the statute, and may be easily understood by the jury. Section 156 of Chapter 30 of the Revised Statutes of 1845 relating to criminal jurisprudence, provided for the punishment of the offense

of unlawfully, wantonly, wilfully or maliciously killing or wounding domestic animals owned by another. Snap v. People, 19 Ill. 79, was an indictment under that statute, and did not charge malice against the owner of the animal, and a conviction was sustained. True, the language of that statute is slightly different from this. But in Swartzbaugh v. People, *supra,* an indictment under the statute now before us was held good, and it did not charge malice against the owner. It was held not necessary to charge the defendant with malice against the owner, in State v. Scott, 2 Dev. & B. (N. Car.) 35; Brown v. State, 26 Ohio St. 176; State v. Bruner, 111 Ind. 98; Mosely v. State, 28 Ga. 190; Territory v. Crozier, 6 Dak. 8. The indictment charged that plaintiff in error did not act maliciously, and in many instructions the court made it indispensable to a conviction that malice against the owner should be shown. We are of opinion that this point is not well taken.

It is argued that the proof did not warrant a conviction. Plaintiff in error was a stock farmer and raised registered short horns. He had several hundred head of stock. His pasture adjoined the pasture of Johnson. The cattle of each had previously broken into the pasture of the other, and the men were unfriendly on that account. A few days before the occurrence here involved another bull owned by Johnson had been in the enclosure of plaintiff in error. On the day in question Johnson had a bull calf or a bull one year and seven days old, which he had bought four or five days before. It got into the pasture of plaintiff in error, and among his cows, two of whom were in a heat. Plaintiff in error got a pail of salt and called his cattle to the barn yard, and drove one of said two cows into a shed and from there into an inner stable, and the bull followed. Plaintiff in error then turned the cow out and left the bull in the stable. This was about 3:10 o'clock P. M. Plaintiff in error then went to town and returned about 8 P. M., and went into the

stable with a lantern and a milk pail. The bull put his head down and attempted to attack plaintiff in error, but the latter dodged and the bull struck the barn instead, and then kicked plaintiff in error twice and hit the lantern and put it out. Plaintiff in error went to his house and lit his lantern, came back and got a rope over the bull's horns and tied him up in a stall, then put a plank beside him in the stall and then castrated him, or, as he phrased it, "made an international winner out of him," and then turned him loose. Plaintiff in error while testifying in his own behalf was asked why he castrated the bull, and he said it had got to be a contest between him and the bull for the possession of the milking stable; that he was alone and had no help; and that he did not care to turn him out with the other cattle because of the other cow which was in a heat. He was asked the same question on cross-examination and answered that he did it because he had to have the milking stable and had to get the bull out, but that the bull was then tied to the stanchion and he did not castrate him because of any fear that the bull was then going to jump on him, or because he was then attempting to or could do any damage to his cows. Plaintiff in error argues that his act was justified. If he had injured the bull while attempting to separate him from the cows or in defending himself from the attack of the bull in the stable, and such injury appeared to him reasonably necessary in the defense of his cattle or of his own person, and would have so appeared to a reasonable person situated as he was, no doubt he would be entitled to be exonerated. But he did not castrate the bull in an effort to separate him from the cows or in his own defense. The bull had already been separated from the herd for more than six hours. He was in that stable because plaintiff in error had enticed him there, and had shut him in. He was tied and could not then possibly injure plaintiff in error or his cows. There is no proof how many stalls plaintiff in error had on

his premises, but as the owner of several hundred cattle it is not to be presumed that this was the only stall in which he could milk his cows. The right and duty of plaintiff in error, and the restrictions placed by law upon him, under such circumstances, are thus stated by Chief Justice Caton in Snap v. People, *supra;* "It is a violation of the common law as well as of this statute, for a person to shoot or wound stock found trespassing upon his premises. He may expel them from his premises, and use the necessary force for that purpose, doing them no unnecessary damage; or he may take them up *damage feasant*, if need be, to protect his crops or close, but the law of right, as well as humanity, forbids him to inflict an unnecessary injury upon the brute. The owner of the animal may be liable for the damage committed by it, but the injured party may not inflict injury in return. He may not take the law into his own hands, and thus retaliate upon the owner, and wreak his vengeance upon the animal, which but follows the instincts of nature in seeking food where it is most inviting." We are of opinion that the proof did not justify plaintiff in error.

The court sustained objections to proof offered by plaintiff in error to the effect that when a cow has been served by a bull of another breed, and she produces a cross breed calf, there remains with the cow a tendency to cross breed ever afterwards; and also that if a bull has once attacked a man, he will have the habit for a long time thereafter of attacking that particular man, and that the only known remedy is to castrate the bull. It is argued that this proof tended to justify the act of plaintiff in error. We are of opinion that the court properly refused to admit this evidence. The law has not given a party authority to right his wrongs in this fashion. Besides, plaintiff in error was questioned on both direct and cross examination as to the reasons why he castrated the bull, and he gave them and did not give any such reasons. He did not claim that he was acting under the influence of any such theories.

It is argued that the court erred in ruling upon certain instructions. The ruling upon some of them is supported by what we have already said. In other cases we find that the instruction properly construed does not have the exact meaning attributed to it. But we find upon examination that plaintiff in error has omitted from his abstract numerous instructions which were given by the court, many of them at his request. Rule 16 of this court (137 Ill. App. 625) requires the abstract to set out in full every instruction given, modified or refused. The reasons for this rule are stated in Thompson v. People, 192 Ill. 79, and Toluca, M. & H. Ry. Co. v. Haws, 194 Ill. 92, and in the numerous cases there cited. In view of these omissions from the abstract, it will be presumed in support of the judgment of the court below that the given instructions as a series were correct, that any omissions or inaccuracies appearing in those set out in the abstract were cured by other given instructions, or that those which plaintiff in error requested contained the same error or imperfection complained of.

It is argued that the fine is excessive, in view of the fact that the bull was worth only $40, and was not killed. This is not a suit to reimburse the owner. It is a prosecution for cruelty and malicious mischief. The jury were authorized by the statute to fix the punishment at imprisonment in the penitentiary for not less than one year or more than three years, or at a fine of from one cent to $1000, or to inflict both imprisonment and fine. The imprisonment is mentioned first in the statute. An average punishment would have been confinement in the penitentiary for eighteen months and a fine of $500. This jury inflicted much less than half of what the law permitted. The law has authorized the jury to fix the punishment. They saw the demeanor of plaintiff in error upon the witness stand, and may have seen that which threw light upon his motives and upon the extent to which he was controlled by malice in what he did. The trial judge who

also heard plaintiff in error testify, has approved the punishment. We cannot say upon this record that the fine is so excessive as to call for a reversal on that ground.

There was a lengthy argument upon questions of evidence, and the trial judge in deciding the questions delivered a somewhat lengthy opinion, in which he discussed the questions argued, and expressed his views upon them. Complaint is made of this language used in the presence of the jury. The remarks of the court appear to have been reasonably necessary in a discussion of the questions argued. Ashbaugh v. Murphy, 90 Ill. 182. Plaintiff in error did not except to the language used, neither did he ask to have the jury withdrawn during the lengthy argument which preceded the decision by the judge nor while that decision was announced. We do not think plaintiff in error has preserved any question in that regard for review.

We find no reversible error presented by the abstract and briefs of plaintiff in error. The judgment is therefore affirmed.

*Affirmed.*